UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN JACOB DE LA TORRE and ZALEEYA DE LA TORRE, individually and as decedent Juan De La Torre's successors in interest, minors by and through their Guardian Ad Litem, VIVICA GONZALEZ; VIVICA GONZALEZ, an individual; and GRACIELA ARELLANO, an individual,<br><br>                    Plaintiffs,<br><br>     v.<br><br>SWIFT TRANSPORTATION COMPANY, a publicly traded Delaware corporation; SWIFT TRANSPORTATION SERVICES, LLC, a Delaware Limited Liability Company; SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, a Delaware Limited Liability Company; INTERSTATE EQUIPMENT LEASING, LLC, a Delaware Limited Liability Company; EDWARD GREER, JR., an individual; SWIFT LEASING CO., LLC (DOE NO. 1); FIERRO TRUCKING II, LLC (DOE NO. 2); and JOSE ANGEL MARTINEZ (DOE NO. 3),<br><br>                    Defendants. | No.  2:13-cv-1786 GEB DAD<br><br><br>ORDER |

This matter came before the court on July 11, 2014, for hearing of defendants' amended motion for a protective order.  Specifically, defendants seek an order requiring that a driver

1

1    training manual, driver training video tapes, an owner-operator agreement and Qualcomm System
2    data, which are responsive to plaintiffs' request for production of documents, be produced subject
3    to a protective order and that the protective order prevent the sharing of these documents outside
4    of this litigation.  Attorney Ryan Casey appeared on behalf of the plaintiffs and attorney Gregory
5    McCormick appeared on behalf of the defendants.
6         "Generally, the public can gain access to litigation documents and information produced
7    during discovery unless the party opposing disclosure shows 'good cause' why a protective order
8    is necessary."  Phillips ex rel. Estates of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1210 (9th
9    Cir. 2002).  See also In re Roman Catholic Archbishop of Portland in Oregon, 661 F.3d 417, 424
10   (9th Cir. 2011) ("As a general rule, the public is permitted access to litigation documents and
11   information produced during discovery.").
12        However, under Rule 26(c)(1) of the Federal Rules of Civil Procedure, "[t]he court may,
13   for good cause, issue an order to protect a party or person from annoyance, embarrassment,
14   oppression, or undue burden or expense."  "In the context of discovery, it is well-established that
15   a party wishing to obtain an order of protection over discovery material must demonstrate that
16   'good cause' exists for the order of protection."  Pansy v. Borough of Stroudsburg, 23 F.3d 772,
17   786 (3rd Cir. 1994).  See also Gray v. First Winthrop Corp., 133 F.R.D. 39, 40 (N.D. Cal. 1990)
18   ("Such orders are only appropriate, however, upon a showing of 'good cause' by the party
19   seeking the order.").
20        To establish good cause, the party seeking protection must show that particular harm will
21   occur if no protective order is entered.  See Phillips, 307 F.3d at 1210-11; San Jose Mercury
22   News, Inc. v. U.S. Dist. Court, 187 F.3d 1096, 1103 (9th Cir. 1999).  "Broad allegations of harm,
23   unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."
24   Beckman Industries, Inc. v. International Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992).  See also
25   Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130 (9th Cir. 2003) ("A party asserting
26   good cause bears the burden, for each particular document it seeks to protect, of showing that
27   specific prejudice or harm will result if no protective order is granted."); Reilly v. MediaNews
28   Group Inc., No. C 06-4332 SI, 2007 WL 196682, at *4 (N.D. Cal. Jan. 24, 2007) ("The Court

therefore must examine each disputed record to determine if defendants have made a 'particularized showing' of 'good cause' to warrant maintaining the records under seal, or to warrant protection under Rule 26(c).").

> Where a business is the party seeking protection, it will have to show that disclosure would cause significant harm to its competitive and financial position. That showing requires specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of harm.

Contratto v. Ethicon, Inc., 227 F.R.D. 304, 307-08 (N.D. Cal. 2005) (quoting Deford v. Schmid Prods. Co., 120 F.R.D. 648, 653 (D. Md. 1987)).

Information the court may protect includes "trade secret[s] or other confidential research, development, or commercial information."[1] FED. R. CIV. PRO. 26(c)(1)(G). However, "'there is no absolute privilege for trade secrets and similar confidential information.'" Federal Open Market Committee v. Merrill, 443 U.S. 340, 362 (1979) (quoting 8 C. Wright & A. Miller, Federal Practice and Procedure § 2043, p. 300 (1970)). A Trade secret or commercially sensitive information must be "important proprietary information" and the party opposing disclosure must make "a strong showing that it has historically sought to maintain the confidentiality of this information." Gonzales v. Google, Inc., 234 F.R.D. 674, 684 (N.D. Cal. 2006). "In order to resist discovery of a trade secret, a party must first demonstrate by competent evidence that the information sought through discovery is a trade secret and that disclosure of the secret might be harmful." Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co., 107 F.R.D. 288, 292 (D.C. Del. 1985) (citing Centurion Industries, Inc. v. Warren Steurer and Associates, 665 F.2d 323, 325-26 (10th Cir. 1981)). See also United States v. Exxon Corp., 94 F.R.D. 250, 251 (D.C. D.C. 1981) ("With respect to the claim of confidential business information, this standard demands that the company prove that disclosure will result in a clearly defined and very serious

---

[1] Under California law a trade secret is defined as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." CAL. CIV. CODE § 3426.1.

injury to its business.").

"Absent a protective order, parties to a law suit may disseminate materials obtained during discovery as they see fit." Jepson, Inc. v. Makita Elec. Works, Ltd., 30 F.3d 854, 858 (7th Cir. 1994). See also Oklahoma Hosp. Ass'n v. Oklahoma Pub. Co., 748 F.2d 1421, 1424 (10th Cir. 1984) ("While it may be conceded that parties to litigation have a constitutionally protected right to disseminate information obtained by them through the discovery process absent a valid protective order, it does not follow that they can be compelled to disseminate such information."). Nonetheless, when dealing with confidential information, a court may compel the production of such information while simultaneously restricting those who may access it. See Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992) (finding "protection from misuse of trade secrets by competitors" good cause for restricting access). A party seeking such a protective order "with a non-dissemination provision" bears the burden of demonstrating good cause for such an order, although a showing that the discovery constitutes a trade secret is an adequate demonstration of good cause. Wauchop v. Domino's Pizza, Inc., 138 F.R.D. 539, 545-46 (N.D. Ind. 1991). See also Culinary Foods, Inc. v. Raychem Corp., 151 F.R.D. 297, 306-07 (N.D. Ill. 1993) (finding good cause to "hold that confidential information obtained by Culinary in this litigation may not be disseminated to litigants in other cases against Raychem.").

The general risk of public disclosure or collaborative sharing of information, however, does not by itself constitute good cause for a protective order under Rule 26(c). See Wauchop, 138 F.R.D. at 546 ("The risk–or in this case, the certainty–that the party receiving the discovery will share it with others does not alone constitute good cause for a protective order."); United States v. Hooker Chemicals & Plastics Corp., 90 F.R.D. 421, 426 (D.C. N.Y. 1981) ("Hooker also argues that the disclosure of information garnered through discovery will be detrimental to its position in parallel lawsuits. This is unquestionably true. However, this is not a reason for a court to impose a protective order."). In this regard, "[t]he federal rules do not foreclose collaboration among litigants, and the court does not consider the possibility that plaintiff will share the results of discovery with any other litigant any part of defendant's showing of good cause to justify a protective order." Parsons v. General Motors Corp., 85 F.R.D. 724, 726, n.1 (D.C. Ga. 1980).

1  See also Henderson v. FedEx Exp., Civil Action No. 5:09-CV-85 (CAR), 2009 WL 1951059, at
2  *5 (M.D. Ga. July 6, 2009) ("District courts, therefore, should not consider the possibility that a
3  plaintiff will share the results of discovery with other litigants when determining whether
4  information should be guarded by a confidentiality agreement or protective order."); cf. Foltz,
5  331 F.3d at 1131-32 ("Allowing the fruits of one litigation to facilitate preparation in other cases
6  advances the interests of judicial economy by avoiding the wasteful duplication of discovery.");
7  Deford, 120 F.R.D. at 654 ("The plaintiffs' primary argument in favor of disclosure is their desire
8  to share information with other litigants and their counsel.  This is an appropriate goal under the
9  Federal Rules of Civil Procedure, which are intended to secure the just, speedy, and inexpensive
10 determination of every action.").

11        Here, all that defendants have offered in support of their argument that the various
12 categories of discovery responses should be subject to a protective order which includes a non-
13 sharing provision is a four-page declaration from Donald D. Diggins, the Human Resource
14 Compliance Manager with Swift Transportation of Arizona, LLC.  Therein, Mr. Diggins declares
15 that the training materials at issue were "designed for the sole use of Swift Transportation,"
16 consist of "many programs that are unique to Swift," and that were developed at a "significant
17 expense" to Swift.  (Diggins' Decl. (Dkt. 48-2) at 2.)  Mr. Diggins also declares that Swift's
18 Information Technology Department worked closely with Qualcomm to develop "macros to meet
19 the unique needs of Swift."  (Id. at 3.)  He states that the "Swift Rapid Response team" created
20 the owner-operator program and that the owner-operator agreement "consists of policies and
21 procedures that cover the business partnership Swift has with its owner-operators."  (Id.)
22 According to Mr. Diggins, disclosure of these documents "would allow rival companies to
23 implement Swift programs without the time and expense" expended by Swift.  (Id.)

24        Defendants, however, have not submitted the documents responsive to plaintiff's
25 discovery requests at issue for the court's review, nor provided even a single example of a
26 document containing a purported trade secret for the court's consideration.  Moreover, no such
27 example was alluded to by defense counsel at the July 11, 2014 hearing on this motion.
28 Moreover, Mr. Diggins declaration provides only broad and conclusory allegations regarding the

nature of these documents and the alleged harm that would result from their disclosure in the absence of a protective order. Although defendants have asserted that the documents at issue are "too voluminous" to summarize, the fact of the matter is that they have failed to provide a single concrete example demonstrating how any of these discovery documents implicate a trade secret or commercially sensitive information nor have they identified any particular harm posed by the disclosure of those documents.

Under these circumstances, the court finds that defendants have not met their burden of establishing good cause for the requested protective order. See Ohio Valley Environmental Coalition v. Elk Run Coal Co., Inc., 291 F.R.D. 114, 121 (S.D. W.Va. 2013) ("A factually unsupported contention that research could potentially be used by a competitor, and the competitor would benefit by not having to incur the expense of conducting the research, is insufficient to establish actual and severe financial and competitive harm."); Contratto, 227 F.R.D. at 308-09 ("The declaration fails to explain why the exhibits attached thereto should be protected and fails to identify any specific prejudice or harm that will result from public access to these documents. Defendants' motion similarly fails to address the particular harm that will result from disclosure of each individual document."); Deford, 120 F.R.D. at 654 ("While a document-by-document analysis is not required, it is relevant that Schmid failed to provide this Court with a single document as a concrete example of particular harm."); Waelde v. Merck, Sharp & Dohme, 94 F.R.D. 27, 29 (E.D. Mich. 1981) (denying a motion for protective order where "Defendant has done little more to sustain its burden of proof on the issue of trade secret status of the information sought than assert that the information is a trade secret because the FDA treats it as such, that the information was costly to produce and would be costly for competitors to duplicate, and that it has not been previously publicly disclosed. The only competitive injury asserted is that defendant's competitors could use the information to obtain FDA approval of similar drugs"); Hooker, 90 F.R.D. at 425-26 ("In this case, movant Hooker has alleged in a most conclusory fashion that it will suffer certain injuries. No specific instances are cited where trade secrets will be disclosed or where Hooker will be put at a competitive disadvantage. On this record, the court cannot evaluate these claims of particularized need, and the order cannot issue on this basis.");

1  Parsons, 85 F.R.D. at 726 ("General Motors has not made a particularized showing that the
2  information sought is confidential as required by Fed. R. Civ. P. 26(c)(7) for entry of a protective
3  order.  Moreover, GM's allegations of competitive harm are vague and conclusory when specific
4  examples are necessary."); cf. Davis v. Social Service Coordinators, Inc., No. 1:10-cv-2372 LJO
5  SKO, 2012 WL 2376217, at *2 (E.D. Cal. June 22, 2012) (finding good cause to seal "internal
6  operating procedures as well as scripts for employees to follow when interacting with customers"
7  after reviewing the documents at issue); Navarro v. Eskanos & Adler, No. C-06-2231 WHA
8  (EDL), 2007 WL 902550, (N.D. Cal. Mar. 22, 2007) (finding good cause to maintain
9  confidentiality designation of some pages of training and procedure guide after conducting a page
10 by page review of those documents).

## CONCLUSION

Upon consideration of the arguments on file and at the hearing, and for the reasons set forth above and on the record at the hearing, IT IS HEREBY ORDERED that defendants' amended motion for a protective order (Dkt. No. 48) is denied.

Dated: July 18, 2014

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1\orders.civil\delatorre1786.oah.071114